## THE STATE v. THE LINCOLN SAVINGS BANK.

1. TAXES. *Savings Bank.* Whether a bank is "a savings bank" is determined not by the designation in the charter, but its character should be determined by its organization, powers and mode of doing business, provided in the corporation act. The power given to *femes covert* and minors to make deposits, and when their deposits reached $100, at their option to be converted into stock, if valid, does not denote a savings bank.

2. SAME. *Same. Privilege.* Savings banks are liable to the privilege tax imposed by the acts of 1881 and 1883, although said banks may have earned no surplus.

---

### FROM LINCOLN.

---

Appeal in error from the Circuit Court of Lincoln county. J. J. WILLIAMS, J.

P. C. SMITHSON, for the State.

HOLMAN & HOLMAN for Bank.

WILSON, Sp. J., delivered the opinion of the court.

The State claimed a privilege tax from the Lincoln Savings Bank, located and doing business in the town of Fayetteville, Lincoln county, for the years 1881, 1882, 1883, and 1884, under the revenue acts passed by the Legislature in 1881 and 1883. The corporation denied the claim, and the question of its liability was submitted to the judge holding the circuit for that county upon an agreed state of facts. He decided against the claim of the State, and it has appealed.

The State *v.* Lincoln Savings Bank.

From the agreed state of facts, it appears, that the Lincoln Savings Bank was chartered by an act of the Legislature passed January 11, 1869, and organized under its charter in 1870. Since its organization it has been doing a banking business under its charter.

Fayetteville, in which it is located, has a population of less than 5,000, and in 1881, 1882 and 1883, it had no surplus earnings in its possession.

The trial judge held that the defendant was a savings bank under its charter, and as such, under the 13th section of the act of the General Assembly, passed April 1, 1881, and the same section of a similar act passed March 30, 1883, was taxable as a privilege only upon its surplus earnings, and as it had no surplus earnings in its possession for the years for which the tax was demanded, it was not liable.

We think his Honor was in error in holding that the defendant was "a savings bank," in the legal sense of the term, under its charter. It is true that in the Act of January 11, 1869, incorporating the defendant, it is named the "Lincoln Savings Bank"; but the mere designation of it by this name does not make it a savings bank. To determine its character we must look to its organization, powers and mode of doing business, provided in the incorporation act. A reference to this act will show that the defendant was incorporated as other banks, for thirty years, with a capital stock, divided into shares, and that it was given all the ordinary banking powers usually accorded to regular banking institutions. There is noth-

ing in its organization, or powers, in chartered modes of doing business to distinguish it from ordinary banks. The power given to *femes covert* and minors, in the 5th section of the act, to make deposits, and when their deposits reached $100.00, it might, at their option, be converted into stock, if valid, does not denote the nature of the bank; and in the incorporating Act it is provided that it shall pay to the State such tax as shall be imposed on similar institutions by the Legislature. But, if it be conceded to be a savings bank in the legal sense of these terms, we are of opinion that it is, nevertheless, liable to the privilege tax demanded.

The 13th section of the act passed April 7, 1881, and the same section of a similar act passed March 30th, 1883, "to provide more just and equitable laws for the assessment and collection of revenue for State and county purposes," referred to by his honor below to support his judgment, declare "that the privilege and franchises granted by the Legislature of this State to savings banks or institutions for savings, *are hereby declared* to be personal *property and liable to taxation as such* in the town, ward, or district where they are located, to an amount not exceeding the gross sum of their surplus earned and in the possession of said banks or institutions." It then provides the way to ascertain this amount.

We think it obvious that the Legislature in these sections had in view purely savings banks or institutions, and intended, as such institutions were or could be operated without any capital stock or shares therein,

The State *v.* Lincoln Savings Bank.

which, as to ordinary banks were made liable to taxation in the hands of their owners in previous sections of the law, to make the privileges and franchises granted to them personal property, and liable to a property tax as such, upon the valuation fixed by the act. The Legislature, in the sections referred to, was not dealing with its powers, and under the Constitution, to impose privilege taxes, or to put any limit upon them when it passed acts *"to provide revenue"* for State and county purposes. For the same Legislatures, in their sessions in 1881 and 1883, when they enacted laws *"to provide revenue* for these purposes," made banks and banking, without exception, a privilege, and the amount fixed in the act of 1881, upon these institutions in towns of less than 5,000 and over 4,000 inhabitants, was $125.00 per *annum*. Under the act of 1883, it is fixed at $100.00.

The judgment of the circuit court is reversed and set aside, and a judgment will be rendered here for the amount of the tax demanded, with interest and costs.